UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOUISE GOETZ, *individually and on behalf of all others similarly situated*, *et al.*,

                              Plaintiffs,

                    -v-

AINSWORTH PET NUTRITION, LLC, *et al.*,

                              Defendants.

---

24-CV-04799 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Louise Goetz and Karen Meierdiercks brought this putative class action against Post Consumer Brands, LLC and Ainsworth Pet Nutrition, LLC, asserting violations of Sections 349 and 350 of the New York General Business Law ("GBL") and breach of warranty based on Defendants' allegedly false claims that their products were "natural" rather than synthetic. Before the Court now is Defendants' motion to dismiss the complaint and strike Plaintiffs' nationwide class allegations. For the reasons that follow, the motion is denied.

I.    **Background**

      A.    **Factual Background**

      The following facts, taken from the First Amended Complaint, are assumed true for the purposes of this opinion. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

      Defendants manufacture, advertise, and sell a range of wet and dry pet food products throughout the United States, including in New York. (ECF No. 22 ("FAC") ¶ 1.) The products' packaging includes the label "natural food" in varying formats and sizes, alongside the phrase "with added vitamins, minerals & taurine." (*Id.* at 6-7 (capitalization altered).) Plaintiffs

identify forty-seven products so labeled yet containing ingredients classified as synthetic by the United States Food and Drug Administration.  (*Id.* ¶¶ 20-22.)  These synthetic ingredients include zinc sulfate, copper sulfate, D-calcium pantothenate, thiamine mononitrate, pyridoxine hydrochloride, citric acid, glycerin, dicalcium phosphate, tricalcium phosphate, xanthan gum, and menadione sodium bisulfate complex.  (*Id.* ¶ 20.)  Plaintiffs maintain that the "natural" label is a misrepresentation aimed at "capitalizing on the preference of health-conscious pet owners to purchase pet food that is free from synthetic ingredients."  (*Id.* ¶ 2.)

Plaintiffs Goetz and Meierdiercks are New York residents who purchased Defendants' products as recently as November 2022 and August 2024, respectively.  (*Id.* ¶¶ 9-10.)  Goetz purchased Defendants' "Rachael Ray Nutrish Real Beef Pea & Brown Rice Recipe Dry Dog Food," while Meierdiercks purchased "Rachael Ray Nutrish Chicken & Liver Wet Cat Food." (*Id.*)  The purchases were made via online third-party retailers and shipped to Plaintiffs' homes in New York.  (*Id.*)  Plaintiffs relied on the "natural" label when purchasing the products, which they understood to mean that the products did not contain any synthetic ingredients.  (*Id.*) Plaintiffs allege that they would not have purchased the products, or would have purchased them only at lower prices, if they had known that the products contained synthetic ingredients.  (*Id.*) Plaintiffs assert claims for beach of express warranty and violations of GBL Sections 349 (deceptive acts and practices) and 350 (false advertising).  (*Id.* ¶¶ 31-60.)

Plaintiffs also purport to represent a nationwide class of persons in the United States who purchased the products for "personal, family, or household consumption" and a subclass of individuals who purchased the products for the same purposes in New York.  (*Id.* ¶¶ 24-25.) Plaintiffs assert breach of express warranty claims on behalf of the nationwide class, alleging

that the Defendants falsely represented that the products did not contain synthetic ingredients.[1] (*Id.* ¶ 58.)  Plaintiffs assert both breach of express warranty and violations of GBL Sections 349 and 350 on behalf of the New York subclass.  (*Id.* ¶¶ 31-58.)

### B.    Procedural Background

Plaintiffs commenced this action on June 24, 2024 (ECF No. 1) and filed an amended complaint on September 16, 2024 (FAC).  Plaintiffs initially included another Defendant, Ray Marks Co. LLC, which was terminated and replaced with Defendant Post Consumer Brands, LLC upon joint motion by the parties.  (ECF Nos. 13, 15.)  Defendants moved to dismiss the complaint and strike Plaintiffs' nationwide class allegations on September 30, 2024 (ECF No. 25), and filed a supporting memorandum of law (ECF No. 26 ("Mem.")).  Plaintiffs opposed the motion on October 14, 2024 (ECF No. 35 ("Opp.")), and Defendants replied in support of the motion on October 21, 2024 (ECF No. 36 ("Reply")).  Defendants also moved, on October 3, 2024, to stay discovery pending the Court's resolution of the motion to dismiss and strike (ECF No. 31), which the Court granted on October 11, 2024 (ECF No. 34).

## II.    Legal Standard

### A.    Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This means that a complaint

---

[1] Plaintiffs refer to Uniform Commercial Code Sections 2-313 and 2-607 as the basis for these claims.  (FAC ¶ 60.).

is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.* at 678, the Court must draw "all inferences in the light most favorable to the non-moving party . . . ." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). Determining whether a complaint states a plausible claim is ultimately a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.    Motion to Strike

The court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter . . . on motion made by a party." Fed. R. Civ. P. 12(f). Rule 23 instructs courts to "determine . . . whether to certify the action as a class action" at "an early practicable time" after the commencement of a suit. Fed. R. Civ. P. 23(c)(1)(A). This reflects a 2003 change from earlier language requiring a class certification decision to be made "as soon as practicable." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 39 (2d Cir. 2006).

Motions to strike are "generally looked upon with disfavor." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (quoting *Chen–Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)). A motion to strike class allegations is "even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled." *Chenensky v. N.Y. Life Ins. Co.*, No. 07-CV-11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011). In other words, "motions to strike class allegations are often denied as premature." *Reynolds v.*

4

*Lifewatch, Inc*., 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015).  To prevail on such a motion before

taking discovery, "a defendant must demonstrate from the face of the complaint that it would be

impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain

during discovery."  *Id*. (cleaned up).

### III.    Discussion

#### A.    Motion to Dismiss

##### 1.    Improper Group Pleading

The Court first addresses Defendants' argument that the amended complaint must be

dismissed because it fails to "distinguish between conduct allegedly attributable to either

Defendant."  (*See* Mem. at 23.)  According to the complaint, Defendants Post Consumer Brands,

LLC ("PCB") and Ainsworth Pet Nutrition, LLC ("Ainsworth") are Delaware limited liability

companies, headquartered in Lakeville, Minnesota and Meadville, Pennsylvania, respectively.

(*See* FAC ¶¶ 11-12.)  The complaint includes a picture of one of Defendants' products, which

clearly shows that Ainsworth at least distributed the product.  (*Id*. at 10.)  The complaint does not

provide any more detail about Ainsworth and PCB's respective roles in the alleged misconduct,

other than stating that Defendants "acted jointly" and "in concert."  (*Id*. ¶ 14.)

"Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or

exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each

defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  *In re*

*Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 438 (S.D.N.Y. 2019) (quoting *Atuahene v.*

*City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order)).  "Where a complaint

lumps all the defendants together in each claim and provides no factual basis to distinguish their

conduct, it fails to satisfy this minimum standard."  *Id*. (quotation marks and brackets omitted).

But, where a complaint is detailed enough to "enable the adverse party to answer and prepare for

trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial," the complaint satisfies Rule 8 "even [if] it includes certain allegations against 'Defendants' collectively." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 144 (S.D.N.Y. 2014).

At the outset, the cases that Defendants rely on are distinct from the situation here, where two companies allegedly jointly manufactured, marketed, and distributed the products in question.  In *Saphirstein v. Mauzone Mania LLC*, the plaintiffs sued not only four named defendants but 20 anonymous ones, and failed to provide even basic information necessary to discern which companies were involved.  No. 15-CV-7264, 2017 WL 3278893, at *3 (E.D.N.Y. July 31, 2017).  In *Abhyankar by Behrstock v. JPMorgan Chase & Co.*, the court granted a motion to sever a defendant—JPMorgan Chase & Co.—that had no relationship at all to the allegations in the complaint.  No. 18-CV-9411, 2019 WL 6170057, at *1-2 (S.D.N.Y. Nov. 19, 2019).  The court did not dismiss the entire action for failure to sufficiently distinguish between two culpable defendants.  *Id.*  And in *Amiron Dev. Corp. v. Sytner*, the court dismissed RICO claims against several individual defendants who were "not specifically mentioned in the factual section of the Complaint or in the over 140 pages of exhibits attached thereto."  No. 12-CV-3036, 2013 WL 1332725, at *5 (E.D.N.Y. Mar. 29, 2013).

Here, the complaint is easily sufficient with respect to Ainsworth, which is clearly alleged to be (or at least to have been) the products' distributor.  (FAC ¶ 21.)  The motion is therefore denied as to Ainsworth.

As to PCB, the situation is murkier.  On the one hand, Defendants are correct that the complaint does not identify what actions were specifically taken by PCB.  On the other hand, Plaintiffs and Defendants jointly moved the Court to add PCB to the case as a defendant, based

on defense counsel's representation that PCB, rather than the previously named Ray Marks Co. LLC, owns the brand and products at issue.  (*See* ECF No. 14 at 2.)  Defendants do not deny attesting before this Court that "Post Consumer Brands, LLC is the correct entity based upon the allegations in the operative complaint" (Opp. at 2), but now claim that "Ainsworth and Post are not related."  (Reply at 12.)  At best, such bait-and-switch tactics "tend to destroy the atmosphere of friendly cooperation and professional collegiality which should exist between opposing attorneys," vital "if civil litigation is to be resolved promptly and fairly on the merits and with minimum expense to society and the participants."  *Hot Locks, Inc. v. Ooh La La, Inc.*, 107 F.R.D. 751, 752 (S.D.N.Y. 1985).

    In an effort to shed further light on the situation, the Court first looks to Defendants' Rule 7.1 corporate disclosure statements, in which they "[i]dentify any corporate affiliates, subsidiaries, and/or parent corporation and any publicly held corporation owning 10% or more of the stock of any non-governmental corporate party or intervenor."  (ECF Nos. 18 and 19.)  Ainsworth's statement, filed on August 26, 2024, discloses J.M. Smucker Company as its owner. (ECF No. 18 at 1.)  PCB's statement, filed on the same day, discloses Post Holdings, Inc. ("Post Holdings"), as its owner.  (ECF No. 19 at 1.)

    Judicial notice may be taken of documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  This includes, for example, "documents required by law to be filed with the SEC."  *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 258 (S.D.N.Y. 2020) (taking notice of a merger agreement). According to Post Holdings' 2023 Form 10-K, "[o]n April 28, 2023, we completed our acquisition of a portion of The J. M. Smucker Company's . . . pet food business, including brands such as *Rachael Ray Nutrish*, Nature's Recipe, 9Lives, Kibbles 'n Bits and Gravy Train,

private label pet food assets and certain manufacturing and distribution facilities . . . *which is reported in our Post Consumer Brands segment*."  Post Holdings, Inc., Annual Report (Form 10-K) (Nov. 17, 2023) (emphasis added).  According to J.M. Smucker's 2023 Form 10-K, "we sold certain pet food brands to *Post Holdings* . . . . The transaction included the *Rachael Ray® Nutrish®*, 9Lives®, Kibbles 'n Bits®, Nature's Recipe®, and Gravy Train® brands, as well as our private label pet food business, inclusive of certain trademarks and licensing agreements, manufacturing and distribution facilities in Bloomsburg, Pennsylvania, *manufacturing facilities in Meadville, Pennsylvania* and Lawrence, Kansas, and approximately 1,100 employees who supported these pet food brands."  J.M. Smucker Co., Annual Report (Form 10-K) (June 20, 2023) (emphasis added).  Rachael Ray Nutrish is the brand at issue in this lawsuit, and Ainsworth is headquartered in Meadville, Pennsylvania.  (FAC ¶¶ 3, 11.)

Because PCB owns the brand at issue, and because PCB's lawyers represented as much to Plaintiffs and to the Court, the Court determines that the complaint is adequate to provide fair notice to PCB of Plaintiffs' claims.  *Cf. Atuahene*, 10 F. App'x at 34.  The claims against PCB are therefore not dismissed.  If Defendants still believe that the wrong parties are named in the complaint, they are free to file a Rule 21 motion in due course.

### 2.    Failure to State a Claim

#### a.    GBL §§ 349 & 350

Defendants first move to dismiss Plaintiffs' GBL claims, arguing that Plaintiffs have not alleged any misrepresentation.  (Mem. at 17.)  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  N.Y. Gen. Bus. L. § 349.  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."  *Id.* § 350.  "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1)

consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.").

A material misrepresentation is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink*, 714 F.3d at 741; *see also Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). "What is objectively reasonable depends on the facts and context of the alleged misrepresentations and 'may be determined as a matter of law or fact (as individual cases require)'." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 178 (2021) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). Plaintiffs must do more than show "a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner"—rather, the "standard requires a probability that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) (emphasis added); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("[T]he applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled.").[2] While it is "well settled that a court *may*

---

[2] As Plaintiffs have adequately alleged that substantial number of consumers would be misled by the challenged labels, the precise contours of "significant portion" are immaterial here. The Court notes, however, that, while "significant portion" has yet to be defined by the Second Circuit, there are reasons to think it does not impose a particularly onerous burden on Plaintiffs. The New York Court of Appeals has long held that the state's consumer protection laws,

determine as a matter of law that an allegedly deceptive advertisement would not have misled a

reasonable consumer," *Fink*, 714 F.3d at 741 (emphasis added), "[g]enerally, this inquiry is not

appropriate on a motion to dismiss," *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL

4277187, at *3 (S.D.N.Y. Sept. 25, 2017) (collecting cases).  Typically, determining

reasonableness as a matter of law is appropriate only where a plaintiff's claims are "patently

implausible or unrealistic."  *Id.* at *4 (quotation mark omitted).

    Plaintiffs' central claim is that Defendants' packaging prominently features the word

"natural," which Plaintiffs took to mean that the products were made without synthetic

ingredients.  (FAC ¶¶ 9-10.)  Plaintiffs allege that Defendants labeled the Products "natural" in

---

including GBL § 349, are "meant to take into account the impact of allegedly deceptive
statements on the 'vast multitude which the statutes were enacted to safeguard—including the
ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but
are governed by appearances and general impressions.'"  *City of New York v. Smokes-
Spirits.com, Inc.*, 541 F.3d 425, 456 (2d Cir. 2008), *rev'd on other grounds sub nom. Hemi Grp.,
LLC v. City of New York*, 559 U.S. 1 (2010) (quoting *Guggenheimer v. Ginzburg*, 43 N.Y.2d
268, 273 (1977)); *see also Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962, 2023 WL
3829559, at *2 (2d Cir. June 6, 2023) (summary order) ("A 'reasonable consumer' includes
those 'who, in making purchases, do not stop to analyze but are governed by appearances and
general impressions.'" (also quoting *Guggenheimer*)); *Food Parade, Inc. v. Off. of Consumer
Affs. of Cnty. of Nassau*, 7 N.Y.3d 568, 575 (2006) (Graffeo, J., dissenting) (also quoting
*Guggenheimer*) (explaining that GBL § 349 "tak[es] into account not only the impact on the
'average customer'"); *Lonner v. Simon Prop. Grp., Inc*., 866 N.Y.S.2d 239, 246 (2d Dep't 2008)
("Judge Graffeo, in her dissent in [*Food Parade*] accurately described the scope of [GBL]
§ 349").  The Court of Appeals has also counseled that the GBL's consumer protections are
"intentionally broad" in scope, *Goshen*, 98 N.Y.2d at 324, and that "[t]he reach of these statutes
provides needed authority to cope with the numerous, ever-changing types of false and deceptive
business practices," *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 291 (1999) (quotation marks and
brackets omitted).  Additionally, the Second Circuit's "significant portion" language originated
in California law and has never been used by New York courts applying New York law.  *See,
e.g.*, *Bustamante*, 100 F.4th at 426 (quoting *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093,
1097 (9th Cir. 2023)); *Olson v. Major League Baseball*, 29 F.4th 59, 85 (2d Cir. 2022) (quoting
*Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (2003)); *Jessani v. Monini N. Am.,
Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order) (quoting *Ebner v. Fresh Inc.*, 838 F.3d
958, 965 (9th Cir. 2016)).  It thus appears unlikely that the "significant portion" requirement
represents a departure from the longstanding practice in New York of considering a deceptive
practice's impact on reasonable, but less-astute-than-average, consumers.

order to take advantage of "the growing market for natural products," in particular "[h]ealth-conscious pet owners [who] are willing to pay a price premium for products labeled and advertised as natural." (*Id.* ¶ 19.)  In some cases, the "natural" label was marginal relative to the overall packaging—such as in the lower corner of the label—whereas in others, it was prominently displayed in large font. (*Id.* at 6-7.)  The labels also disclose "added vitamins, minerals & taurine," but Plaintiffs argue that "an ordinary person would understand [this] claim to mean that the added vitamins, minerals and/or taurine are natural as well." (*Id.* ¶ 18 (capitalization altered).)

Like other courts, this Court agrees that Plaintiffs have stated a claim.  *See, e.g.*, *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 279 (E.D.N.Y. 2021) (declining to dismiss similar claims against a pet food company); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *7 (S.D.N.Y. Mar. 30, 2018) (denying motion to dismiss where defendant "sought to capitalize on consumer trends related to the use of natural products and therefore advertised their product as 'natural'").  "It is not unreasonable as a matter of law for a consumer to expect that a product labeled 'natural' to contain only natural, and not synthetic ingredients."  *Grossman*, 516 F. Supp. 3d at 279-80; *see also Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) (same).  That is true even though Defendants' product labels say only "natural" and not "100%," "solely," "exclusively," or "only" "natural."  *See Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 243 (S.D.N.Y. 2021) (the lack of an "'all natural' or '100% natural' [label] does not preclude a reasonable juror from concluding that the product is composed of non-synthetic products"); *Orrico v. Nordic Nats., Inc.*, No. 22-CV-3195, 2023 WL 6308015, at *4 (E.D.N.Y. Sept. 28, 2023) (rejecting the defendant's argument that "a representation that the products are

'Naturals' is not misleading in the way that a representation that the products are 'all natural' or '100% natural' would be"); *Paulino v. Conopco, Inc.*, No. 14-CV-5145, 2015 WL 4895234, at *5 (E.D.N.Y. Aug. 17, 2015) ("At this stage . . . [t]hat the label makes no explicit claim of being 'All Natural,' '100% natural,' or 'free from synthetics' is beside the point.").

Defendants argue that Plaintiffs have failed to plead that the challenged products actually contain synthetic ingredients. (Mem. at 18.)  According to Defendants, most of the challenged ingredients are "vitamins and minerals," and Plaintiffs' allegations that they are used in their "synthetic forms" are conclusory. (*Id.*)  But the operative complaint clearly identifies at least some "synthetic ingredients," including glycerin, xanthan gum, and menadione sodium bisulfate complex. (FAC ¶ 20.)  Defendants argue that FDA definitions of "synthetic" are not binding (Mem. at 18-19 n.8), and the Court agrees.  But Plaintiffs are not claiming that GBL Sections 349 and 350 are violated per se because Defendants have violated FDA regulations.  *Cf. Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397, 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023) (rejecting a GBL claim based on a violation of "FDA[] regulations governing how flavorings in food are labeled" because it amounted to a "claim for private enforcement of FDA regulations").  Rather, Plaintiffs are using the FDA's definition of "synthetic" as persuasive evidence of what a reasonable consumer might consider to be "synthetic" as opposed to "natural."  The Court agrees that the FDA definitions may be used in this manner without converting Plaintiffs' action into an impermissible attempt to enforce FDA regulations.  The rest of Defendants' cases are inapposite, as they involve ingredients with both natural and synthetic forms.  For example, the ingredients list in *Hawkins v. Coca-Cola Co.* disclosed "malic acid" (vanilla flavoring), which comes in two forms: DL-Malic Acid (artificial) and L-Malic Acid (naturally occurring in fruit).  654 F.Supp.3d 290, 297 (S.D.N.Y. 2023).  The court there found that Plaintiffs' single sentence—"laboratory

analysis concluded this Product contains artificial, DL-Malic Acid instead of natural, L-Malic Acid"—was insufficient even at the pleading stage.  *Id.* at 305.  In contrast, here, at least some of the ingredients in Defendants' products are named in their synthetic forms—for example, "menadione sodium bisulfate complex" rather than the more generic "vitamin K."  (FAC ¶¶ 10, 20(k).)  The rest of Defendants' citations on this point are similarly unhelpful.  *See, e.g.*, *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 803 (S.D.N.Y. 2021) (granting a motion to dismiss where the complaint failed to allege that vanilla flavoring came from artificial as opposed to natural sources); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 682 (S.D.N.Y. 2021) (granting a motion to dismiss where the challenged product disclosed that it contained vanilla bean extract and the plaintiff's evidence failed to prove that the product contained no vanilla).[3]

Defendants next argue that "natural" has many possible meanings.  (Mem. at 18.)  But the mere fact that "the term's use is confusing to consumers" does not prevent it from being used deceptively.  *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013).  Moreover, Defendants fail to offer a single

---

[3] It is true that Plaintiffs have identified some ingredients that occur naturally.  For example, Plaintiffs challenge Defendants' use of "citric acid," alleging that like "[m]ore than 90 percent of commercially produced citric acid" today, "the citric acid contained in the Products is manufactured through a processed derivative of black mold."  (FAC ¶ 20(f).)  Courts have previously rejected this kind of guilt-by-association reasoning.  *See Indiviglio v. B&G Foods, Inc.*, No. 22-CV-9545, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023) ("This generalized statement about 'industry' is not enough to adequately allege the citric acid used in the Product is industrially produced and not derived from fruit."); *Tarzian v. Kraft Heinz Foods Co.*, No. 18-CV-7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) (dismissing complaint because "citric acid" could have come from either artificial or natural sources).  However, unlike in those cases, Plaintiffs here have also alleged Defendants use ingredients, like menadione sodium bisulfate complex, that are by definition synthetic.  (FAC ¶ 20(k).)  In the Court's view, it is not too far a leap to infer that, because Defendants are willing to use synthetic forms of some vitamins and minerals, they are more likely to use the synthetic forms of others, particularly in light of widespread commercial practice.  The Court therefore declines to dismiss at the pleading stage Plaintiffs' claims even as to those ingredients that also have naturally occurring forms.

definition of "natural" that their products do satisfy.[4]  Indeed, it is unclear what purpose including "natural" on their packaging would serve if not to indicate a lack of *unnatural* ingredients or components.  Nor do Defendants argue that their use of the term was merely puffery or obvious exaggeration.  In any event, at least some reasonable consumers could interpret Defendants' marketing in the way that Plaintiffs here did.

Third, Defendants argue that it is unreasonable for any consumer to believe that pet food could truly be "natural," as "the unavoidable conclusion when buying [packaged dog and cat food] is that it has undergone some amount of processing."  (Mem. at 18.).  The Court disagrees that this "unavoidable conclusion" defeats Plaintiffs' specific claims.  While at least some processing might be universal, it is not clear why pet food—like some shelf-stable human food—cannot be made without the addition of synthetic (as opposed to naturally occurring) vitamins.  It is also far from clear that the ordinary reasonable consumer is intimately familiar with the nature of the pet food industry and its processing norms.[5]  This is therefore unlike more tenuous claims, such as the notion that reasonable consumers believe Cap'n Crunch cereal to be made with the fictitious fruit "crunchberries."  *See Sugawara v. Pepsico, Inc.*, No. 08-CV-1335, 2009 WL 1439115, at *1 (E.D. Cal. May 21, 2009); *but see Ackerman v. Coca-Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010) (denying a motion to dismiss where

---

[4] The one definition they provide—"occurring in conformity with the ordinary course of nature" (Mem. at 18)—is at least plausibly violated by the inclusion of synthetic, lab-created vitamin and mineral analogues.

[5] *Cf. Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("The fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables.").

plaintiffs claimed that the name "vitaminwater" was misleading insofar as the product was not "composed only of vitamins and water").

Lastly, Defendants argue that "any ambiguity arising from the 'Natural' statement is plainly clarified by the Products' ingredient panel," which identifies the challenged ingredients. (Mem. at 21.)  The Court is unpersuaded that all reasonable consumers should know what "menadione sodium bisulfate complex" (synthetic vitamin K) is, for example.  (*Cf.* Mem. at 9; FAC ¶ 20.)  This is especially true given that the naturally occurring forms of the same vitamins and minerals have similarly difficult-to-pronounce names, like "phylloquinone" (one of two forms of naturally occurring vitamin K).[6]  "Defendant's theory that a reasonable consumer could simply consult the ingredient list to confirm that the Product is . . . non-synthetic[] would require the Court to credit the notion that a reasonable consumer would be familiar with what the many ingredients listed are *and* those ingredients' properties, origins, and effects . . . . This is plainly untenable."  *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 454 (S.D.N.Y. 2022). Moreover, even if the list of ingredients were intelligible to an ordinary shopper, "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."  *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018).  "Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging."  *Id.* (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008)).

---

[6] *See vitamin K*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/vitamin%20K (last visited Mar. 1, 2025).

Because Plaintiffs have plausibly alleged a material misrepresentation, the Court denies

the Defendants' motion to dismiss on that basis.

### b.    Breach of Express Warranty

Defendants argue that no express warranty was breached, because the products'

packaging does not "represent[] that the ingredients used therein are '100%,' 'exclusively,' or

'only' 'Natural.'"  (Mem. at 22.).  Under New York law, "[a]ny description of the goods which is

made part of the basis of the bargain creates an express warranty that the goods shall conform to

the description."  N.Y. U.C.C. § 2-313(1)(b).  To state a claim for breach of express warranty

under New York law, a plaintiff must show "an 'affirmation of fact or promise by the seller, the

natural tendency of which was to induce the buyer to purchase' and that the warranty was relied

upon."  *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x 110, 111-12

(2d Cir. 2010) (summary order) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152,

154 (2d Dep't 1989)).  "Claims for deception [pursuant to GBL §§ 349 and 350] and breach of

express warranty both depend on what a reasonable consumer would believe, so allegations

sufficient to plead one generally suffice to plead the other."  *Richardson v. Edgewell Pers. Care,

LLC*, No. 23-128, 2023 WL 7130940, at *2 (2d Cir. Oct. 30, 2023) (summary order) (collecting

cases).  And, as with deception claims, whether statements are so "vague" or "generalized" that

they cannot support reasonable reliance typically "is a question of fact that should not be decided

at the motion to dismiss stage."  *Id.*

As with Plaintiffs' GBL claims, the Court concludes that Plaintiffs have stated claims for

breach of express warranty.  The "natural" label is featured on the front of the products'

packaging, and as discussed above, Plaintiffs plausibly allege that a reasonable consumer would

expect that "natural" pet food does not contain synthetic ingredients.  This conclusion aligns with

those of other courts in this Circuit.  *See e.g. Grossman*, 516 F. Supp. 3d at 283 (declining to

dismiss plaintiffs' express warranty claim for failure to state a claim where plaintiffs adequately

pleaded violations of GBL §§ 349 and 350); *Petrosino*, 2018 WL 1614349, at *8 (same);[7] *Mason*

*v. Reed's Inc.*, 515 F. Supp. 3d 135, 146 (S.D.N.Y. 2021) (same).  The motion to dismiss

Plaintiffs' breach of warranty claims is therefore denied.

### 3.    Lack of Class Standing

Defendants next ask the Court to dismiss Plaintiffs' claims relating to "any Nutrish

Product they did not purchase," on the ground that the "Plaintiffs lack Article III standing to

bring claims based upon Products they did not purchase."  (*See* Mem. at 14-15.)  The plaintiff in

a putative class action has class standing if they "personally suffered some actual injury as a

result of the putatively illegal conduct of the defendant" and "such conduct implicates the same

set of concerns as the conduct alleged to have caused injury to other members of the putative

class by the same defendants."  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,

693 F.3d 145, 162 (2d Cir. 2012) (cleaned up).  In the context of state consumer protection laws,

a putative class plaintiff will have standing "for products that he did not purchase, so long as

those products, and the false or deceptive manner in which they were marketed, are sufficiently

similar to the products that the named plaintiff *did* purchase."  *Bautista v. CytoSport, Inc.*, 223 F.

Supp. 3d 182, 188 (S.D.N.Y. 2016).

Here, the products that Plaintiffs did purchase are sufficiently similar to those they did

not purchase to establish class standing, at least for purposes of the present motion.  Although

---

[7] The courts in *Grossman*, 516 F. Supp. 3d at 283, and *Petrosino*, 2018 WL 1614349, at *8, did dismiss the breach of warranty claims for lack of "pre-suit notice," but did so without prejudice and granted the plaintiffs leave to amend after finding that the claims were substantively meritorious.

different variants of Defendants' products have different ingredient lists, and not all products contain all of the challenged ingredients (FAC at 11-17), Defendants allegedly marketed all of the challenged products "in a systematically misleading manner by misrepresenting that many of its products are 'natural'" (*id.* ¶ 1). All are types of wet and dry pet food that are labeled "natural," and each contains a mix of synthetic ingredients. (*id.* ¶¶ 15, 22-23.) That is enough. *See Grossman*, 516 F. Supp. at 277 (finding class standing where products "were all sold and marketed by [the] defendants and possessed the same allegedly deceptive representation that the underlying ingredients were 'natural'"). Notwithstanding differences in the products' ingredients, "the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016); *cf. DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 30 (2d Cir. 2014) (finding no class standing where "seven different products were falsely advertised through 35–some different allegedly fraudulent statements").[8]

Defendants are correct that it is impossible to determine from the face of the complaint whether "the allegedly misleading 'Natural' statement appears in the same manner," as Plaintiffs "include only images of three" such products. (Mem. at 15.) However, the question of how prominently "natural" is displayed, and whether it is sufficiently prominent to mislead a

---

[8] Defendants erroneously cite *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 548 (W.D.N.Y. 2018), for the proposition that Plaintiffs lack class standing. (Mem. at 14.) But the portion of *Holve* that Defendants cite pertains to individual standing, *not* class standing. Several pages later in the *Holve* opinion, that court rejects the same argument that Defendants make here. 334 F. Supp. 3d at 549-52 ("Defendant argues that, regardless of whether Plaintiff has Article III standing to assert individual claims for products she did not purchase, Plaintiff lacks class standing . . . . However, the Court finds that, because the nature and content of the specific misrepresentation alleged regarding the Chicken Seasoning Mix is similar with respect to the unpurchased products, . . . Plaintiff has standing to pursue claims related to the Other Products under New York law on behalf of the putative class members." (cleaned up)).

reasonable consumer, is a fact issue to be decided after discovery. Plaintiffs' allegation that "natural" is displayed prominently on the front of each package suffices for now.

Any remaining concerns "regarding the [Products'] differences can be addressed at the class certification stage." *Wai Chu v. Samsung Elecs. Am., Inc.*, No. 18-CV-11742, 2020 WL 1330662, at *3 (S.D.N.Y. Mar. 23, 2020). The motion to dismiss Plaintiffs' putative class claims based on unpurchased products is therefore denied.

### B.    Motion to Strike Nationwide Class Allegations

Finally, Defendants move to strike Plaintiffs' nationwide class allegations for lack of manageability and predominance. (Mem. at 26-27.) Because the Court must apply New York choice-of-law rules, which require evaluating breach of warranty claims under the law of the jurisdiction with the most significant contacts, it will likely have to apply the substantive law of multiple states. *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) (applying the laws of the states in which the products were purchased). Plaintiffs argue that the motion is premature, impossible to evaluate without discovery, and wrong on the merits. (Opp. at 25-26.)

Were the Court considering a motion for class certification, Plaintiffs would need to demonstrate that their proposed class satisfies the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Assuming the requirements of Rule 23(a) were met, Plaintiffs would then need to establish that certification is appropriate for one of the three reasons set forth in Rule 23(b). Here, Plaintiffs seek to proceed under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members"—predominance— and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"—manageability. Fed. R. Civ. P. 23(b)(3).

However, while a "party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met," *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015), it need not do so immediately upon filing a complaint or when responding to a motion to dismiss. Rather, certification is only required at "an early practicable time" after the commencement of a suit. Fed. R. Civ. P. 23(c)(1)(A). Because Defendants are now moving to strike Plaintiffs' class allegations in advance of class certification, they face the higher burden of proving "from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery." *Reynolds*, 136 F. Supp. 3d at 511 (cleaned up).

Defendants argue that it would be "nearly impossible and patently unmanageable" to adjudicate the express warranty claims of the nationwide class because the court would be forced to "apply the laws of all 50 states." (Mem. at 27-28.) They also argue that differences in substantive state law mean that individualized issues of reliance, privity, and notice will predominate over common ones. (*Id.*)

But prior to discovery "it is impossible for the Court to determine how many states' laws are implicated in this action, how many of those laws vary, and how many variances are material." *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 80 (E.D.N.Y. 2017). Even acknowledging the apparent differences across state law regarding notice, reliance, and privity, it is not clear that "the standards of liability in [the] relevant states are sufficiently different that they would raise insurmountable case management issues." *Id*. In addition, "certification under Rule 23(c)(4) is often used as a tool to address manageability concerns under Rule 23(b) by certifying the class as to discrete issues only." *Ostenfeld v. Laundress, LLC*, No. 22-CV-10667,

2024 WL 967124, at *5 (S.D.N.Y. Mar. 5, 2024) (cleaned up). Accordingly, courts in this Circuit have cautioned that "the spectre of having to apply different substantive law does not warrant refusing to certify a class on common-law claims." *Reynolds*, 136 F. Supp. 3d at 518 (cleaned up). This is particularly so when "a class action raises common issues of conduct that would establish liability under a number of states' laws." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 79 (E.D.N.Y. 2004). Even where state laws differ, "concerns are lessened where the states' laws do not vary materially." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013). "Issues relating to . . . predominance, in particular, are ripe for [] further factual development," *Carr v. Johnson & Johnson Consumer Inc.*, No. 21-CV-6557, 2023 WL 3504662, at *4 (E.D.N.Y. May 17, 2023), and are thus "precisely the sort of determination that the Court would make at the class certification stage," *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16-CV-5265, 2018 WL 1773142, at *2 (S.D.N.Y. Apr. 12, 2018).

Defendants' cases only illustrate that a successful motion to strike requires far more exceptional circumstances than those present here. *See, e.g.*, *Borgese v. Baby Brezza Enters. LLC*, No. 20-CV-1180, 2021 WL 634722, at *4 (S.D.N.Y. Feb. 18, 2021) ("[T]he Complaint does not allege *any* common legal issues . . . ."). The Court therefore agrees with Plaintiffs that resolving Defendants' objections "requires a more developed record on the facts and law" and is thus not ripe for decision at this time. *Mason*, 515 F. Supp. 3d at 148 (denying a similar motion). Defendants' motion to strike Plaintiffs' class allegations is therefore denied.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss and to strike the nationwide class allegations is DENIED.

Defendants shall file an answer to the First Amended Complaint within 14 days after the date of this opinion and order.

The stay of discovery is hereby lifted.  The parties shall file a revised proposed case management plan within 21 days after the date of this opinion and order.

The Clerk of Court is directed to terminate the motions at ECF Nos. 16 and 25.

SO ORDERED.

Dated: March 3, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge